**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **KENT BURLEIGH** | **CASE NO. 6:25-CV-00638** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PIONEER PRODUCTION SERVICES INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (doc. 63) filed by Third-Party Defendant and Cross- Defendant W&T Offshore, Inc. ("W&T"). W&T moves to dismiss the Third-Party Complaint of Dynamic Production Services, Inc. ("Dynamic"). The Court notes that despite the instant motion being filed by W&T to dismiss the Third-Party claim by Defendant, Dynamic, Defendants Quality Process Services, LLC ("QPS"), and Pioneer Production Services, Inc. ("Pioneer") are also opposing W&T's motion. These Defendants remark that they have also asserted claims against W&T for contractual defense and indemnity related to Plaintiff's incident, and W&T, in its motion, asserts that the claims by all Defendants for contractual defense and indemnity are barred by the LOAIA. The Court will consider all arguments by the parties,[1] but this ruling will only address what is before the Court—whether or not to dismiss Dynamic's Third-Party Complaint against W&T.

[1] QPS argues that it is premature to dismiss the indemnity obligations because no party has been adjudicated to be at fault, and there is a genuine issue of fault regarding whether the subject contract pertains to a well. Pioneer asserts that any ruling as to Dynamic should not be the law of the case and binding against it because its contract with W&T is different and raises different issues for determining whether LOAIA applies, and the motion is premature.

## BACKGROUND

On August 29, 2023, W&T and Dynamic entered into a Master Service Contract ("MSC") wherein Dynamic was to provide certain services including the supply of personnel to assist W&T in its business of producing oil and gas.[2] W&T owned and operated certain offshore platforms located in Ship Shoal Block 80, including a platform designated as Platform 80A, located on the Outer Continental Shelf off the Louisiana coast.[3]

On or about March 7, 2025, Dynamic was performing its services for W&T pursuant to the MSC in connection with Ship Shoal 80A.[4] During this time, Plaintiff Kent Burleigh, an employee of W&T, claims he was injured in connection with a "... forceful explosion and resulting fire . . ." on the Ship shoal 80A platform.[5] Burleigh has named as Defendants, Dynamic, Pioneer Production Services, Inc. ("Pioneer") and Quality Process Services, LLC ("Quality"). Dynamic filed a Third-Party Complaint against W&T seeking defense and indemnity in accordance with the MSC.[6]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a

---

[2] Defendant's exhibits A and B, William Williford Affidavit.
[3] *Id.,* and exhibit C, Kent Burleigh deposition.
[4] Defendant's exhibit B.
[5] Doc. 101, Plaintiff's Original Petition.
[6] Doc. 35.

genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

W&T contends that the law of the state of Louisiana applies pursuant to 33 USCA § 1331. The Court notes that no party opposes W&T's position that the law of the state of

Louisiana applies. The Court agrees that Louisiana law applies here. See *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835 (1969) (Federal law applies to the Outer Continental Shelf by reason of the Outer Continental Shelf Lands Act, which applies the laws of adjacent states).

W&T moves to dismiss Dynamic's claim for indemnity and defense pursuant to Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). Dynamic relies on Article 5(B) of the MSC, which states as follows:

> (B) W&T shall release, indemnify, protect, defend and hold Contractor Group harmless from and against any and all claims arising directly or indirectly out of any property damage or loss suffered by or personal or bodily injury to, sickness, disease or death of any member of W&T Group, in any way, directly or indirectly, arising out of, connected with, incident to or resulting from or relating to the performance of the contract or the use by W&T group of, or their presence on, any premises or property owned, operated, chartered or controlled by either Group or sed [sic] for transportation of W&T Group property or personnel, in any way, directly or indirectly, arising out of, connected with, incident to, or resulting from or relating to the performance of the Contract, including any ingress, egress, loading or unloading of personnel or cargo, whether the claims in [sic] groundless or not, and *WHETHER THE INJURY, SICKNESS, DISEASE OR DEATH IS CAUSED IN WHOLE OR IN PART BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE, FAULT OR STRICT LIABILITY OF ANY MEMBER OF CONTRACTOR GROUP* or the condition of any vehicle, unseaworthiness of any vessel, airworthiness of any aircraft, or by defect in any equipment or property of Contractor Group.[7]

Louisiana Revised Statute § 9:1780 (LOAIA) provides, in pertinent part, the following:

> A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other

[7] Defendant's exhibit A, p. 4.

> state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
>
> ***
>
> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well or wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
>
> G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

W&T maintains that because the MSC is one pertaining to the exploration and production of oil and gas from a fixed structure on the Outer Continental Shelf, located off the coast of Louisiana, Dynamic's demand for contractual defense and indemnity pursuant to the MSC is statutorily prohibited by LOAIA.[8]

---

[8] W&T also asserts that there is no provision in the MSC that requires that Dynamic pay to be named as an additionally insured on W&T's liability insurance policy, noting that this is the only exception to enforcing the LOAIA bar, citing *Marcel v. Placid Oil Company*, 11 F.3d 563 (5th Cir. 1994)

Dynamic maintains that invoking the LOAIA to invalidate the indemnity provision would defeat the statute's legislative purpose and violate public policy. Dynamic argues that even if Louisiana law applies, W&T's Motion is premature based on the well-settled jurisprudence of *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987), which provides that the applicability of LOAIA cannot be adjudicated and is non-justiciable until the underlying issue of liability is resolved and the defendant is cast in judgment. And lastly, Dynamic contends that there exist genuine issues of material fact as to whether the MSC pertains to an oil, gas, or water well.

*Public policy*

The Louisiana Supreme Court has held that "[t]he purpose of the legislature, and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence." *Rodrigue v. LeGros*, 563 So.2d 248, 254 (La. 1990). Dynamic argues that W&T, the principal here, would avoid its own indemnity obligation, and not protect the subcontractor, which Dynamic suggests contradicts the purpose of the LOAIA.

Dynamic relies on *Lanclos v. Crown DBL, Inc.*¸ 1 So.3d 685, 686 (La. App. 3 Cir. 12/10/08), *writ denied*, 3 So.3d 489 (La. 3/6/09), which held that the LOAIA did not require invalidating the indemnity provision. W&T asserts that *Lanclos* has been superseded by both jurisprudential and statutory authority, citing *Silverman v. Mike Rogers Drilling Co.,* 34 So.3d 1099 (La. App. 2 d Cir. 2010) (holding that the indemnity provision in the contract is void and unenforceable). W&T remarks that Plaintiff, Burleigh claims that it was the negligence of Dynamic and QPS that caused his injuries; Dynamic and QPS are v. seeking

indemnity from W&T (the indemnitor) for Burleigh's claims against Dynamic and/or QPS (indemnitees). As such, W&T argues that *Silverman*, the LOAIA statute, and the Louisiana Civil Code require dismissal of Dynamic and/or QPS's defense and indemnity demand.

*Prematurity*

In *Meloy v. Conoco, Inc.*, as here, the United States Court of Appeals for the Fifth Circuit certified questions to the Louisiana Supreme Court concerning an indemnity agreement between an oil company and a contractor. 504 So.2d 833, 835 (La. 1987). In holding that the LOIA nullifies entirely any contractual provision requiring indemnification where there is negligence or fault on the part of the indemnitee, the court emphasized that the LOIA, however, "does not apply where the indemnitee is not negligent or at fault." *Id.* at 839. The court held that whether an indemnitee "is free from fault and thus outside the scope of the [LOIA] can only be determined *after* trial on the merits." *Id.* (emphasis added). Here, there has been no determination of fault and as such, this motion will be denied as premature at this time, reserving W&T's right to reassert this defense once the determination of fault is made.

*Issues of fact regarding the MSC as it pertains to oil, gas, or water wellS*

Dynamic maintains that there is a genuine issue of material fact for trial as to whether the MSC pertains to a well. If it does not, the LOAIA does not apply. Conversely, if the Court finds that the MSC and Ship Shoal 80 pertain to an oil, gas, or water well, the LOAIA does apply.

As noted by Dynamic, determining the applicability of the LOAIA is a two-step process. First, there must be an agreement that "pertains to" an oil, gas or water well. *Hanks*

*v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 998 (1992). If the contract does not pertain to a well, the inquiry ends. *Id.* Only if the court determines that the contract has the required nexus to a well does the court proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas, or water." *Id.* Although the statute defines an "agreement" pertaining to a well as one concerning "operations related to the exploration, development, production, or transportation of oil, gas, or water," courts interpret the Act as a whole, requiring that those operations themselves must, first and foremost, pertain to a well. *Id.* Therefore, if (but only if) the agreement (1) pertains to a well *and* (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate an indemnity provision contained in or collateral to that agreement. *Id.*

Dynamic relies on *Hanks,* which requires a fact-intensive analysis. In *Hanks,* the Court considered the following factors:

> (1) whether the structures or facilities to which the contract applies or with which it is associated, e.g., production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system;
> (2) what is the geographical location of the facility or system relative to the well or wells;
> (3) whether the structure in question is a pipeline or is closely involved with a pipeline;
> (4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;
> (5) whether the pipeline is a main transmission or trunk line;
> (6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;
> (7) what is the purpose or function of the facility or structure in question;
> (8) what if any facilities or processes intervene between the wellhead and the

> structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;
> (9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question;
> (10) and any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.

*Id.* at 998-999.

Dynamic asserts that the MSC is silent on whether Dynamic's work pertains to a well and remarks that W&T has failed to present evidence establishing that the MSC pertains to an oil, gas, or water well. Dynamic argues that there are disputes of material fact because commingled oil and gas cannot be linked to a particular well, and the MSC does not address exploration, development, production, or transportation of minerals.

W&T has submitted as summary judgment evidence the affidavit of William Williford who attests that W&T obtained leases on the Outer Continental Shel which ". . . are located in Ship Shoal 80 . . . upon which production platforms have been erected, the purpose of which is to produce oil and gas in furtherance of W&T's business."[9]

Additionally, W&T submits as summary judgment evidence the deposition testimony of Brady Hicks, a Pioneer employee who was the person in charge in the area of the W&T field. Hicks testified that "Ship Shoal 79 has the wells and the wells from Ship Shoal 79 flow through a pipeline into Ship Shoal 80"[10] and "Shoal 80 is the process

---

[9] Defendant's exhibit, Doc. 63-6, article 6, Affidavit of William Williford.
[10] Defendant's Exhibit B, Deposition of Brady Hicks, p. 17:13-15.

facility."[11] In other words, the well flows out from Ship Shoal 79 through a pipelines to Ship Shoal 80 where it is processed to separate the oil, water, and gas.[12]

Hicks explained that as the person in charge of the field that included Ship Shoals 41, 14 number 2, 39, 79 and 80, all of these Ship Shoals, except Ship Shoal 80 have a well beneath it, but only Ship Shoal 79 transported product to Ship Shoal 80 for processing.[13]

W&T explains that the Fifth Circuit has recognized an umbilical relationship akin to that which exists between Ship Shoal 79 and Ship Shoal 80 that is sufficient to constitute a well for purposes of applying the LOAIA. W&T notes that in *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 953 F.2d 985 (5th Cir. 1992) ("*Transco")*, the court provided some guidance as follows:

> We are cognizant that certain offshore gas production facilities, in fact, serve many wells radiating out from the platform at angles, so called directional drilling. We believe that these separate wells serviced by one offshore drilling platform, constitute but one "well" for purpose of the act.

*Transco,* at FN 40.

W&T contends that the Fifth Circuit in *Transco* found that a platform which may not have had any wells from which it directly produced oil and gas, but received those products from other wells will still constitute a well for purposes of the LOAIA. W&T argues that Hick's testimony supports its position that the MSC and the Ship Shoal 80 pertain to a well for purposes of applying the LOAIA. The Court agrees with W&T, that the MSC and Ship Shoal 80 pertain to a well and the LOAIA would be applicable.

[11] *Id.* p. 17:16.
[12] *Id.* p. 17.
[13] *Id.* p. 16.

However, as noted hereinabove, the determination of whether the indemnity provision is null and void under the LOAIA will be determined another day, after the fault of the parties has been determined.

## CONCLUSION

For the reasons explained hereinabove, the Motion for Summary Judgment (doc. 63) filed by Third-Party Defendant and Cross- Defendant W&T Offshore, Inc. will be denied as premature, reserving W&T's right to reassert its LOAIA defense after the fault of the parties has been determined. Finally, the Court has also reviewed the QPS and Pioneer's oppositions to W&T's Motion for Summary Judgment, which specifically requested that this ruling as it pertains to W&T and Dynamic cannot be the law of the case because neither QPS nor Pioneer were parties to the MSC. QPS and Pioneer each had their own separate contract. The Court is not determining whether or not the LOAIA will apply to QPS or Pioneer's contracts; that is not before the Court at this time.

**THUS DONE AND SIGNED** in chambers on this 17th day of November, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**